# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| PORTLAND REGENCY, INC., ET AL., | ) |
| | ) |
| PLAINTIFFS | ) |
| | ) CIVIL NO. 2:12-CV-408-DBH |
| V. | ) |
| | ) |
| RBS CITIZENS, N.A., ET AL., | ) |
| | ) |
| DEFENDANTS | ) |

## ORDER ON DISCOVERY DISPUTE

This is a lawsuit about the proper calculation of prepayment and early termination fees for interest rate swap agreements that the parties entered into in connection with associated commercial loans. A large amount of money is at stake. The plaintiff borrowers seek both declaratory judgment about how the fees should be calculated on termination and damages for the defendant banks' alleged negligent and intentional misrepresentation in providing (according to the borrowers) false "indicative quotes" for termination fees. On August 19, 2014, I heard argument on the banks' objection to the Magistrate Judge's ruling that denied certain discovery to the banks on the grounds of untimeliness and Fed. R. Civ. P. 26(b)(4)(D).

The focus of the discovery dispute is whether the banks can learn what the borrowers' non-testifying expert told the borrowers about her assessment of the banks' calculations. The banks argue that the information will counter the borrowers' assertions in their misrepresentation claim (Count Three) that they

have continued to rely on the banks' calculations, assertions that extend beyond the hiring of the expert, beyond the filing of the lawsuit, and even up to the present. Objection to Order of Magistrate Judge at 9 (ECF No. 99).

It became apparent during the argument that, regardless, of how I rule on the appeal from the Magistrate Judge's decision, this issue (or one closely related to it) will emerge at trial as well, because the banks will attempt to question the borrowers' principals and/or the expert on what the borrowers learned even if they do not get the requested discovery. It also became apparent that there is an important disagreement between the parties as to what the element of justifiable reliance entails as part of the borrowers' claim of misrepresentation. The borrowers say that the banks misunderstand a core issue on their misrepresentation claim. The borrowers say that even if they knew that the calculations the banks gave them were wrong, they justifiably relied upon them in not terminating the swaps and incurring termination fees because they believed that the banks would continue to insist on the banks' calculation methods, which would cause the borrowers severe financial prejudice because of the huge penalties. The borrowers liken it to a gun pointed at their heads that the person holding the gun says is loaded, and argue that they are forced to "rely" on the gun holder's assertion. The banks contend that what really happened is that the borrowers did not terminate the swaps because they feared that the banks were correct in their calculations and the borrowers were unwilling to take the financial risk that they would have to pay all that the banks said they would.

The parties disagree over whether Maine or New York law applies. It seems likely that the choice of law ultimately makes no difference. In Thompson v. Cloud, 2014 WL 4092295, at *4 (1st Cir. Aug. 20, 2014), the First Circuit stated: "Under Maine law both fraud and negligent misrepresentation require 'justifiable reliance' on a misrepresentation." The court quoted Barr v. Dyke, 49 A.3d 1280, 1287 (Me. 2012), which required in a fraud case that "[t]he other party justifiably relied upon the representation *as true* and acted upon it to the party's damage." Thompson, 2014 WL 4092295, at n.9 (emphasis added). Thompson also quoted the Restatement (Second) of Torts on negligent misrepresentation as requiring "justifiable reliance upon the information." Thompson, 2014 WL 4092295 at n.10 (quoting Restatement (Second) of Torts § 552(1)).[1] The only New York case the parties cite, Channel Master Corp. v. Aluminum Limited Sales, Inc., 151 N.E.2d 833 (N.Y. 1958), does not seem to differ from the Maine treatment.

The borrowers' justifiable reliance assertion in Count Three is not the conventional reliance element of a misrepresentation claim that I have described above, at least as the reliance issue was presented to me at oral argument.[2] The

---

[1] Restatement (Second) of Torts § 552(1) states: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

[2] The borrowers' lawyer answered my question about ability to recover if the borrowers *knew* the estimates were fraudulent as follows: "Yes, because then we are relying on known false statement. It's still a false statement, but we're relying on it because of the consequence of not relying on it. So it's a statement made—a false statement made on which we have relied, they intended us to rely and we have relied and we are harmed." He also told me: "whether or not [the borrowers' expert] confirms the bank's representation is one that we are put in a position of having to rely upon because of the consequence to us of taking an action that's contrary to accepting what the bank says." Finally, he explained: "I mean if the bank says you're going to incur $5 million in early termination fees if you terminate this, even if they [the borrowers] don't believe that assertion, they're put in the position where they have to come up with a solution for

borrowers do assert great leverage by the banks but, if the borrowers knew or had reason to know that the banks' termination fee calculations were false, it is difficult to understand how the borrowers could be relying on the *truth* of the calculations, rather than on the threat of what the banks would demand if the borrowers did terminate. In dealing with a negligent misrepresentation claim in Devine v. Roche Biomedical Labs., Inc., 637 A.2d 441, 446 (Me. 1994), the Law Court referred to the Restatement (Second) of Torts § 547 cmt. a (1977) for the proposition that "whether a person relies on a fraudulent misrepresentation as opposed to his own investigation is a question of fact." It then went on to vacate summary judgment on the basis that the person who asserted reliance in Devine "testified that he would have reversed [his] decision" on the action to be taken if he had known the statement made to him was inaccurate. Id.

In the end, I conclude that the better course is to delay ruling on the discovery dispute[3] and to reconvene the Local Rule 56 conference on the proposed summary judgment motion. If the misrepresentation claim with its claim of continuing reliance even after engagement of the expert survives summary judgment, then I can proceed to the discovery ruling. If summary

---

how to deal with or put themselves at peril. They must, in fact, then not take other action or put themselves in peril." According to the Restatement (Second) of Torts, "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Restatement (Second) of Torts § 541. "The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity." Id. § 548.

[3] The Rule 26(b)(4)(D) issue is important and not free from doubt, and I am uncertain how it interacts with the evidentiary ruling to be made at trial and other claims of privilege that the plaintiffs say that they will raise then (they say that at trial they will not assert 26(b)(4)(D) as preventing testimony, but instead attorney client privilege). I decline to rule solely on the basis of timeliness because the issue may remain alive as an evidentiary issue at trial.

judgment removes the misrepresentation claim after the expert's engagement, then the dispute becomes moot because the banks have said that without the misrepresentation claim after the expert's engagement they have no basis to inquire into the expert/plaintiffs interchange.

Accordingly, the Clerk's Office shall reschedule the Local Rule 56 conference that was suspended pending resolution of the discovery dispute.

**SO ORDERED.**

**DATED THIS 2ND DAY OF SEPTEMBER, 2014**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**